## DuVal et al. vs. Marshall.

1. ESTOPPEL:
   One who executes an instrument as administrator of an estate is estopped to deny his representative capacity.

2. CONFLICT OF LAWS: *Foreign law.*
   The usual presumption that the common law prevails in another State does not apply to the Creek nation of Indians, but the usage and customs that constitute their laws must be proven.

DuVal et al vs. Marshall.

3. FOREIGN ADMINISTRATOR: *Power over assets in this State.*
Where one domiciled in another country dies, leaving assets in this State, upon which ancillary administration is had, the administrator of the domicil cannot withdraw or dispose of the assets in this State until the ancillary administration is settled, whether there be debts in this State or not; and the assignment by the foreign administrator of a judgment recovered in this State is void.

4. FRAUD:
An assignment of a debt, procured by misrepresentation and suppression of the facts affecting the rights of the assignor, is void.

5. RESULTING TRUST: *By payment of purchase money.*
In order to create a resulting trust in favor of one who pays the purchase money for property bought in the name of another, the payment must be contemporaneous with the purchase.

6. CHANCERY JURISDICTION: *Over the assets of an estate, appointment of a Receiver, etc.*
Where the conduct of the administrator of an estate is such as to hinder and embarrass the collection of the debts of the estate, a Court of Chancery has the power, and it is its duty, to appoint a Receiver to collect and hold the assets, and, having acquired jurisdiction for that purpose, it may retain it for the purpose of finally settling the estate.

7. PARTIES IN CHANCERY:
Where an administrator is wasting the assets of an estate, any heir or creditor may apply to a Court of Chancery to have them placed in the hands of a Receiver, and the estate wound up under its directions.

APPEAL from *Crawford* Circuit Court in Chancery.

Hon. E. D. HAM, Circuit Judge.

*Rose* and *B. T. Du Val,* for appellants.

There was no evidence of fraud, and Marshall will not be heard to say he did not know what the contract contained. 2 Phil. Ev. Cow. & Hill, ch. 8, sec. 1, note 495; *Wilson* v. *Strayhorn,* 26 Ark., 28.

Properly shown that Marshall, when making the assignment, was administrator of his father's estate according to the laws and customs of the Creek nation of Indians. *Barkman* v. *Hopkins,*

17 id., 154, although he was bound by it if he were not. He was estopped from denying it. *Prater* v. *Frazier*, 11 Ark., 249; *Kinsworthy* v. *Mitchell*, 21 id., 145.

Payment to the administrator of the domicil is good. *Swatzel* v. *Arnold*, 1 Wooln., 384; *Watkins* v. *Ellett*, 9 Wall., 740.

The decree was too broad. St. Eq. Pl., sec. 40. The suit could not be sustained by an heir. *Lemon* v. *Rector*, 15 Ark., 436; *Pope* v. *Boyd*, 22 id., 535; *Anthony* v. *Peay*, 18 id., 30; *Worsham* v. *Field*, id., 448.

The decree was for the whole amount, although Marshall sued as one of the heirs, error. *Moulding* v. *Scott*, 13 Ark., 89; *Atkins* v. *Grace*, 21 Ark., 165; Rose Digest, p. 18.

Probate Court alone had jurisdiction. *Moren* v. *McCown*, 23 Ark., 93.

*Walker*, for appellees.

Parol proof inadmissible to show that a purchase was made by one for the use of another, without showing that the purchase was made with the money of such third person. 2 Lead. Ca. in Eq., pt. 1, p. 559, 560; Fonblouque's Eq., 393; Hill on Trustees, 134 note; 2 John's Chan. R., 404; *Steen* v. *Steen*, 5 John Ch. R., 1; *Page* v. *Paige*, 8 N. Hamp. Repts., 187.

The practice of devices to induce a contract which would not otherwise have been made, is fraud. Benjamin on Sales, sec. 428.

No one can derive any benefit from a fraud practiced for him by another. Kerr on Fraud, 111 to 117.

. Great inadequacy of consideration, although not relievable of itself, may afford marks and presumptions of frauds in connection with other circumstances, Story's Eq. Juris., sec. 244, and where one of the parties is less competent than the other to contract judiciously, it will throw upon the other the onus of proving that it was fair and without undue influence. Kerr on

Fraud, 188, 190.   Less than half value is such gross inadequacy.
1 Story's Eq., 247 ; Fonblouque's Eq., 47.

Executory contracts made by Indians void, and in contests
between an Indian and white man, when the former shall have
presumption of title from possession or otherwise, the *onus* shall
be on the white.   Brightly's Dig., 424, sec. 25, and act of U. S.,
30th June, 1834.   This act cannot be questioned since the deci-
sion in the Iowa case, 3 Wall., 407, notwithstanding the decision
in *Hicks* v. *Ewhartonah*, 21 Ark.

.The judgment could be assigned only according to our laws,
Story on Con. of Laws, sec. 33 *et seq.*; 1 Bouvier's Law Dic., 244.

WALKER, J. :

The material facts, as appears from the pleadings and evidence,
are, that in 1860, Ben. Marshall, a native and citizen of the
Creek nation of Indians, recovered judgment in an action by
attachment against one William B. Nowland, in the Crawford
Circuit Court, for the sum of $1692.23.   That the writ of attach-
ment had been levied upon the property of Nowland, and
dissolved, and the property released by the defendant executing
a bond with security, in the statute form.   Upon this judgment
execution issued and was returned *nulla bona*, except as to $200,
To recover the remainder of the judgment; suit was brought by
Marshall in the same court, on the bond given to dissolve the
attachment in the former suit against Nowland, the principal
debtor, and Ben. DuVal and John King, his securities in the
bond.   Pending this suit Marshall died in the Indian nation, in-
testate, and defendant Whitesides was appointed administrator of
his estate, in whose favor judgment was rendered on the 10th
November, 1868, for $2757.   On the 2d September of that year,
King, one of the parties against whom the judgment had been
rendered, prepared and placed in the hands of one Steadham, a

merchant and trader in the Creek nation, the following instrument with instructions to have it executed by the heirs of Ben. Marshall.

" Know all men 'by these presents, that for and in consideration of the sum of four hundred dollars to me in hand paid by John King of Fort Smith, Arkansas, the receipt whereof I hereby acknowledge, I this day sell, transfer and assign unto the said John King, his heirs and assigns, all the right, title, interest and claim of the estate of Ben. Marshall, late of the Creek nation, deceased, in and to a certain debt due by William B. Nowland and others, to the estate, and the judgment rendered thereon in the Crawford Circuit Court, in the State of Arkansas, on the — day of ——, 186–, and I do hereby constitute and appoint the said John King my true and lawful attorney in fact, in my name, but for his sole use and benefit, to ask, demand and sue for the same, and generally to do and perform such other acts and things as may be proper and necessary in the premises. Hereby ratifying and confirming all the acts and doings of the said John King, done, and to be done in the premises.

In witness whereof, I have hereunto set my hand and seal as the administrator of said Benjamin Marshall, in the Creek nation, this 26th November, 1868.

Signed, George Marshall, administrator of the estate of Ben. Marshall, deceased.

Attest : Geo. W. Grayson.

Upon the validity or invalidity of this instrument, arises the material questions to be determined.

George W. Marshall and six others, claiming to be the heirs of Ben. Marshall, deceased, brought their suit in chancery in the Crawford Circuit Court against DuVal, Johnson as administrator of the estate of King (who had died intestate), Whitesides, the administrator of Ben. Marshall's estate, and Thomason and

Humphries, the attorneys of the estate of Marshall, who prosecuted the suits and who obtained both judgments. The bill presents, substantially, the following allegations and charges, in addition to the facts above recited.

That plaintiffs are the children and sole heirs at law of Ben. Marshall; that they had no knowledge or information of the proceedings had in the Crawford Circuit Court, nor of the grant of administration upon said estate to Whitesides, at the time of the execution of the assignment to John King, and remained totally ignorant of such judgment or proceedings until late in the year 1871.

That plaintiff, Geo. W. Marshall, met with Steadham at his store in the Creek nation, who represented to him, that his father, Ben. Marshall, deceased, was indebted to the Masonic Lodge of the Creek nation (of which he was treasurer), in the sum of $400, and upwards; that he, Steadham, was authorized to collect the debt, to which plaintiff replied, that he had never heard of such a debt and knew nothing about it. Steadham assured him that such was the fact, and that John King of Fort Smith, owed his father $400, on account, about a steamboat, which he thought he could collect from King, and proposed to accept an order from him on King for that amount, in satisfaction of the debt his father owed the lodge, to which plaintiff assented. That thereupon Steadham produced an instrument of writing, which plaintiff has been recently informed, and believes, was prepared by King himself, and was in his handwriting, placed it on the counter and said, there is the order on King for the payment of the $400 he owed your father already written for you to sign; and that relying upon these representations of Steadham, he signed the same without reading it, or having heard it read; that plaintiff remained in ignorance of the purport of the instrument so signed until, in 1871, when he was informed that instead of its being an order for $400, it was in fact

an assignment by him as administrator and heir at law of the estate of Ben. Marshall, of said last mentioned judgment. That said instrument was executed without consideration by the said Geo. W. Marshall, and without the knowledge, privity, or consent of the other plaintiffs, heirs of Ben. Marshall, as aforesaid, that, the said George W. had no power whatever to transfer, or assign such judgment. That King is dead, and that Johnson is the administrator of his estate and, that he, as such administrator and Ben. DuVal between them, pretend and claim to be the owners of such judgment by force of said assignment, which plaintiffs allege to be fraudulent and void. Plaintiffs aver, that it was not true that Ben. Marshall owed the Masonic lodge any sum whatever, or that Steadham had power or authority to collect the same, or that in fact anything has ever been paid to said lodge in consideration of any debt due by Ben. Marshall to the lodge, nor did King pay to Steadham, or the lodge, any sum, nor did he owe Marshall upon any other consideration than that growing out of the attachment bond and judgment thereon.

These are the material allegations which we deem it important to recite, in order to a proper understanding and disposition of the case.

There are other allegations charging a combination between . Whitesides, the administrator, Thomason and Humphries, the attorneys, and DuVal, by which, for a consideration the attorneys and Whitesides refuse to collect or suffer the judgment against DuVal and King to be collected ; that the bond of Whitesides is only for $500, a sum wholly insufficient to indemnify the plaintiffs against loss, and that DuVal is in failing circumstances.

Demurrers were filed to the bill, and upon leave, an amended or supplemental bill was filed ; the only part of which it may be necessary to notice is, that letters of administration had been

granted to the plaintiff, George W. Marshall, by the proper authorities of the Creek nation, since the commencement of this suit.

The defendant, DuVal, moved the court for a rule upon the attorneys, who prosecuted the suit, to show by what authority they prosecuted the suit, the motion was sustained, and it appearing from the showing made, that the attorneys were only authorized to represent the plaintiff, George W. Marshall. The court had the names of the other plaintiffs stricken from the record, and by leave of the court, the pleadings were so amended as to conform to such amendment. After having dismissed the suit as to the defendants Thomason and Humphries, and so amended the prayer of the bill for relief as to retain that which asked that the assignment of the judgment executed by Marshall to King be declared void, and set aside, and that a receiver be appointed to collect the judgment, (the subject of litigation) and to hold the money, when collected, subject to the order of the court, the court, upon petition of plaintiff, made an order that a receiver be appointed.

The defendant, DuVal, in his own behalf, and as the administrator of the estate of John King, answered; that from information and belief it was not true that the assignment from Marshall to his intestate, King, was procured by fraud and misrepsentation, and without consideration, but that the same was executed voluntarily and upon a valuable consideration, with a full knowledge of the facts. He admitted the agreement alleged to have been made with Thomason, Humphries and Whitesides to recall the execution issued against him on the judgment rendered in favor of Whitesides as administrator of the estate of Ben. Marshall, and that he had paid to Thomason and Humphries $300 the money due them as a fee, and for which they claimed a lien upon the judgment, and had also paid thirty or forty dollars

to Whitesides for costs of administration. That in addition to this, he had given to Whitesides a bond to indemnify him against loss, because of his refusal to issue execution on the judgment; that he did this, not to defraud the plaintiffs, but in good faith, believing the assignment valid.

The answer is long, and recites conversations and details facts, which need not be referred to. It may suffice to say that the above is substantially the response to the material allegations of the bill.

Whitesides' answer substantially admits the facts alleged as to the receipt of the money for costs, and his recall of the execution, and refusal to issue another. That he had been indemnified by DuVal for so doing, claims that he acted in good faith, believing that the assignment was valid

It will be found upon examination of the pleadings, as amended, that but two questions were put in issue or left to be determined; first, as to the validity of the assignment of the judgment to King, and second as to the proper disposition of the estate in controversy.

The case thus presented was heard upon bill, amended bill, answers and depositions; after hearing which and upon consideration, the court found that the assignment of the judgment made by the plaintiff, George W. Marshall, to John King, was procured to be made by fraud and misrepresentation, and decreed that the same be vacated, set aside and declared to be of no force and effect in law, and, that upon a bond by Luther C. White (who had been appointed receiver) to James A. Lockhart, the clerk of said court, and his successors in office, for the faithful performance of his duties as such receiver, being filed, which was done, in open court and approved, it was ordered that said receiver proceed forthwith to take possession of the assets of the

·estate of said Ben. Marshall, to sue out execution on said judg-
ment, to collect the amount thereof, and all other debts due or
·owing said Marshall's estate by the defendant Whitesides as ad-
ministrator of said estate, against William B. Nowland, Ben.
DuVal and King's estate, on a judgment rendered the 10th
November, 1868; and that he do not pay the money, when col-
lected, to King, or any one claiming the same, by or under him,
or his legal representatives. The court further found that
Whitesides entered into an agreement with DuVal to recall the
execution issued on said judgment, and not to permit another to
be .issued and had thereby committed a *devastavit* of his in-
testate's estate, and that the judgment debt was in danger of
being lost, and directed the receiver to collect and hold the same
subject to the further order of the court.

This is the decree from which the defendants have appealed,
and with regard to which two questions are presented. First, as
to the decree setting aside the assignment of the judgment to
King. Second, as to the disposition made of the property in
suit.

As questions of fact the rendition of the judgment, its valid-
ity, and that an assignment of it was made in the Creek Nation,
there is no question. The validity of the assignment is the ma-
terial question.

The plaintiff avers that the assignment was procured to be
made by the suppression of the necessary facts to enable the
plaintiff to contract with a knowledge of his rights and interest,
and by the misrepresentations of Steadham, the agent ·of King;
that the contract was without consideration, and that the plain-
tiff, George W., at the time he entered into said agreement was
not the administrator of the estate of Ben. Marshall, deceased.

Upon this issue, the written assignment, as administrator, of the
judgment, the property of the estate of Ben. Marshall, makes a

*prima facie* case against the plaintiff, which must be overcome by evidence, and first, as regards the character in which the plaintiff contracted with King and whether he was or not, administrator.

The averment that he was not acting as administrator, is affirmative, and so far as the plaintiff, George W., is concerned, he is estopped by the instrument executed by him in that character from denying it; in addition to which, it is shown by the only evidence introduced, that he was recognized in the Creek nation as administrator of his father's estate, and acted as such; that he was not acting under appointment or letters of administration; that there was no law at the time, in force in the Creek nation, other than custom and usage, under which the next of kin, a son, or some competent person, took upon himself the administration and settlement of estates of deceased persons, and had power under this custom to do so. But the witness does not depose as to the power, under such usage and custom, to sell and dispose of choses in action. If this had been an administration in a sister state, in the absence of the statute laws of the State, we should hold, as we repeatedly have, that the common law was in force under which the powers and duties of the administrator would be determined. In the case of *Cox* v. *Morrow*, 14 Ark., 612, it was held, that in the absence of proof to the contrary, the courts of this State will presume the common law to be in force in another State, without any modification, other than such as was produced by the revolution, and our political institutions in general. But we are not prepared to say that we will presume the existence of the common law in a semi-civilized nation of Indians, acting under usages and customs of their own. Conceding that these usages and customs are laws to them and will govern the disposition of estates made under them, we must have proof of what powers are confered upon an administrator

to dispose of the estate of deceased persons, who die intestate, before we can uphold a contract of sale, of a chose in action belonging to an estate as valid.

In this case a still further question arises. Conceding this to be an administration of the estate of Ben. Marshall, an Indian, resident in the Creek nation, it was evidently the primary administration, for the general settlement and distribution of the intestate's estate, and the administration taken out in Crawford County, Arkansas, was auxiliary to it, an administration for the purpose of collecting the assets in this State, and for the payment of debts and liabilities here ; the residue of the assets (if any) to be held subject to be transferred to the primary administration at the domicil of the intestate, and charged as assets there, and paid out according to the laws and usages of the place of domicil. The case under consideration presents the question as to whether, pending the two administrations, that of the domicil can whilst the auxiliary administration is progressing, sell the assets, and withdraw them from administration. We think not. The expenses of administration were certainly to be paid, and it might be, that debts due in the State, might exist, to be paid. The rights of the foreign administrator do not as matter of right extend beyond the Territory of the Government which grants it ; as to personal property situated in foreign conuntries, the title, if acknowledged at all, is acknowledged *ex comitate.* Story's conflict of laws, sec. 515. And here, says Story, the rule to which reference has so often been made, applies with great force ; that no nation is under obligation to enforce foreign laws prejudicial to the rights of its own subjects. Persons domiciled and dying in one country, are often deeply indebted to foreign creditors, living in other countries, where there are assets of the deceased. In each case, it would be a great hardship upon such creditors, to allow the original executors or administrators

*Vol. xxx.—16.*

to withdraw those funds from the foreign country, without the payment of such debts, and then to leave the creditors to seek their remedy in the domicil of the original executor or administrator, and perhaps there to meet with obstructions and irregularities, in the enforcement of their own rights, from the peculiarities of the local law."

In this particular case, we are not aware of other debts against this administration than the attorney's fees for collecting the debts, and the cost of administration, but that does not affect the principle involved. The question is not to be determined by the extent of the local indebtedness of the intestate, but whether, in any case, the administrator at the domicil can dispose of or withdraw the assets in the hands of the ancillary administrator until the debts are paid and the administration settled, and we are clearly of opinion that he cannot.

In legal effect, this question has been settled by our own court in the case of *Clark* v. *Holt*, 16 Ark., 257, in which it was held that the personal estate of the deceased is to be disposed of by the law of the domicil, and if he has effects in a foreign jurisdiction, and administration be granted on his estate, it is merely ancillary to the administration of the domicil, so far as regards the collection of the effects and the proper disposition of them, but subservient to the rights of creditors, and distributees residing in the country where the ancillary administration is granted."

And in the case of *Payne* & *Huntington* v. *Johnson, adm'r,* decided at the last term of this court, it was held that an administrator cannot pay a creditor of an estate by assigning or selling notes due to the estate, the effect of which would be to appropriate the assets of the estate to the payment of one debt in preference to others.

DuVal et al vs. Marshall.

In the case before us a judgment for $2757 was sold for the mere verbal promise of a third party to pay a debt said to be due by the estate to the Masonic lodge for $400. Holding, as we must, that the assets collected and in the hands of the administrator in Arkansas, although ancillary to that in the Creek Nation, should be held subject to the payment of the debts against the estate in this State, of course they should be classed and paid according to the laws of this State.

We do not think the allegations of fraud and misrepresentation are fully sustained. The evidence is that Steadham, before the contract was entered into, or the assignment executed, told plaintiff that there was an old debt of about $1,000 which Nowland owed plaintiff's father, to which King was security. That witness told him to consider of the matter, and consult with his friends; that one of them was present; that the assignment was read to him, and that he executed it.

But there is no evidence that the plaintiff was aware that Whitesides was administrator in Arkansas, or that there was an attachment bond or judgment on it. Although the assignment bears date sixteen days after the judgment, Steadham says that it was written and delivered to him in the City of Washington about the first of September, more than two months before the judgment was rendered; and, as the transaction took place in the Creek Nation, where both Steadham and plaintiff lived, seventy or more miles from Van Buren, between which places we may well presume there was but little intercourse, it is fair to infer that both of them were ignorant of the existence of such a debt and the judgment on it, and when told of the old debt of Nowland, plaintiff was without information to charge him with inquiry. The instrument to be signed, although drawn by King, who well knew that he and DuVal were bound for the debt, and he must also have had some general knowledge of the amount of

DuVal et al vs. Marshall.

the indebtedness, neither discloses any party as debtor except Nowland—the language is "Nowland and others," nor gives either date or amount. Thus informed, this plaintiff, an Indian of the Creek Nation, was called upon to make this assignment of a judgment for $2,757, on parties who claim to be solvent, for the consideration that Steadham promised verbally that if he, the plaintiff, would sign the instrument of assignment, he, Steadham, would pay a debt of $400, which, Steadham represented to plaintiff, his father owed to the Masonic lodge of Muscogee as treasurer of the lodge, and that he, Steadham, was authorized to collect it.

Considering the additional fact, which is shown by the evidence of Steadham himself, that some six or seven years before that time the lodge building had been destroyed, the lodge broken up, disbanded and scattered during the late war, and had never in all that time been reorganized or reinstated—in fact, that there was no lodge; and, in addition to this, the further fact, as shown by the evidence of the same witness, that the only power given him to make this collection was conferred by a few members of the lodge during the late war; that this power, thus conferred at a time when the lodge had disbanded as a brotherhood, and must be presumed to have forfeited their charter, conferred upon Steadham no authority to collect or to settle the lodge debt (if, in fact, any such existed), and that the only consideration for this assignment was the verbal promise of Steadham that he would pay the lodge debt of $400, are all circumstances tending to prove that the plaintiff had been induced, by misrepresentation or through ignorance of the facts, to make such an assignment, and upon the consideration of a mere verbal promise to pay to a lodge which had no existence, and whose body had been dispersed and disbanded for more than five years, according to the evidence of Steadham, who acted as the agent of

King, and when considered with all the attendant circumstances, we think justify the conclusion at which we have arrived, that the contract was void for want of consideration, and, moreover, that it was void because the administrator of the domicil of the deceased had no power to sell or transfer the assets of the estate in the hands of the ancillary administrator in Arkansas, then in process of administration, and that the court below did not err in decreeing that the assignment be set aside as void.

The contest as to the validity of the assignment must necessarily have been with DuVal as the administrator of the estate of King. Individually, DuVal had no grounds whatever to contest the validity of the assignment, or to assert any right under it. The transfer was made directly to King, in his own name, and, as shown by the written transfer, in his own right.

It is true that near three years after the transfer was made by plaintiff to King, DuVal gave to Steadham a draft on some one in St. Louis for $400, to be applied by Steadham in payment to him for his undertaking to pay the Masonic Lodge debt, which, however, so far as appears, has never been paid, but even if paid it was not a payment of the Lodge debt, but a debt to Steadham. This payment, at the time it was made, was not such a payment of money as to create a resulting trust in favor of Du Val for money paid in the purchase of the debt. The payment must be made at the time of the purchase as held by this court in the case of *McLain* v. *Sale and wife*, at the last term of the court. So that, in fact, neither of the defendants (appellants) has any interest which can be affected by the further orders and decrees of the court with regard to the collection of the judgment or the disposition of the money when collected. In regard to which the state of case presented by the bill, and shown by the admissions of defendant's answers, and the evidence was that under an agreement entered into between Thomason and

Humphries, the attorneys, who had the collection of the judgment, Whitesides, the administrator, in whose name the judgment had been rendered, and DuVal, one of the judgment debtors. DuVal paid the attorneys $300, the fee claimed by them, and to Whitesides, the administrator, some thirty or forty dollars, his fees and costs, and gave Whitesides a bond of indemnity to save him harmless, by reason of his recalling the execution which had been issued, and in consideration of which he and the attorneys agreed with DuVal that they would not again issue, or suffer to be issued, an execution on the judgment; that Whitesides' bond as administrator was only for $500, a sum wholly insufficient to secure the estate against loss.

This is, substantially, the state of case made, in addition to which it is not improbable from the facts disclosed, that both the attorneys prosecuting the claim, and the administrator were influenced mainly in the course they took, by the mistaken belief that the judgment really belonged to the estate of King, and that DuVal was equitably entitled to control it. Be this, however, as it may, the effect of their conduct was to hinder, delay and embarrass the collection of the debt. And we think, from the facts of the case disclosed, that the court had power, and it was its duty to appoint a receiver to collect and hold the estate subject to further the order of the court.

The court did not attempt to settle the title to the estate, indeed, under the law as we construe it, it would have been premature to do so. The several orders made were interlocutory in their effect and purpose. The ancillary administration had not been closed, until which time the residue of the assets, whatever they may be, are not in condition to be turned over to the administrator at the intestate's domicil. If the efficient collection of the money, and its due administration had been well protected, the Chancellor might have remitted the case to the Probate

Court for judicial administration, and particularly where it was probable that claims existed against it, but, such not being the state of case, and, so far as appears from the facts in the case, the attorney's fees and the costs of administration being the only charges of the estate, the Court of Chancery once having taken rightful jurisdiction of the case, had power to retain it, settle the fees due, and finally dispose of the case.

In reaching the above conclusion we have given due consideration to the several points raised by appellant's counsel, and have in effect disposed of them, except that which questions the right of the plaintiff to bring this suit.

It will be found upon examination of the several decisions referred to by counsel, that they do but affirm the general rule, that the action can only be maintained by the party who has title, and that all of the parties whose interests are to be affected by the decree, should be brought before the court, as parties to the suit.

If the bill in this case had been brought to recover a debt belonging to the estate of the intestate, or had prayed for a decree for title in the plaintiff or other party, to the money so to be collected, then, of course, no one but the administrator, in whom the title vested, could maintain the action. But in this case the suit is brought against the administrator and others, his confederates, who it is alleged have asserted a fraudulent claim to the trust found in his hands, and belonging to the estate of his intestate, with regard to which by mal-administration he has committed a *devastavit*. It is true that the legal title to the judgment in contest is in him, but only as a trustee for the benefit of creditors and heirs. The plaintiff is one of the heirs, and as such is interested in the estate and in the faithful performance of the trust. He has set up no exclusive title in himself to the estate, and asks no decree in his favor, nor any decree prejudicial

to the rights of the creditor or his heirs, but that the fraudulent claim to the judgment by DuVal and King, may be declared void, and the collection and safe keeping of the money when collected be confided to some responsible person who will perform the trust which Whitesides, the administrator, has abused.

If this plaintiff, an heir and as such interested in the estate, has no right to sue as *cestui que trust*, then we are at a loss to say who can sue. In the case of *Slocum, Richards & Co.*, v. *Blackburn et al.*, 18 Ark., 309, referred to as authority by counsel, the bill was filed by creditors against the widow and heirs of Marshall, who died intestate, and upon whose estate there had been no administration. It was brought to set aside a fraudulent conveyance of slaves, made by Marshall in his lifetime, and to subject the slaves to the payment of their debt to the exclusion of other creditors. Chief Justice English, who delivered the opinion of the court, held, that under the state of case made, an administrator, not a creditor, was the proper party to sue, and proceeds to remark that there were, however, cases, in which a Court of Chancery may exercise jurisdiction ancillary to that of the Probate Court, in others concurrent, and still in others a superior jurisdiction. Story in his work on chancery pleadings, page 221, says: "If a trustee has fraudulently or improperly parted with the trust property, the *certui que trust* may proceed against the trustee alone." And at page 148, the same writer says: "Where a bill is brought for the due application or disttribution of a surplus, to be paid after payment of debts and legacies, it is not necessary to make creditors or legatees parties to the suit, because the decree of the court will merely direct an account and payment in the course of administration." This is just what the decree, in substance and effect, does in this case, with the exception, that instead of trusting the distribution to

the administrator, it reserves to itself the control of the final disposition of the funds.

The creditors and heirs of the estate were the only parties interested in the collection and distribution of this money, and their inserest was not only not prejudiced but was in fact protected by the decree. There was, therefore, no necessity for making them parties to the suit.

The plaintiff could not compel them to become plaintiffs, and unless he had power as an heir and *cestui que trust* to stop this *devastavit* and waste of the estate, being perpetrated by the trustee and others, there would be no redress. In view of the whole case, and the interests of the parties, we think the suit properly brought.

Let the decree be affirmed.